STATE, EX REL. JOHN B. SHUMAR, v. JEHU P. APPLEGATE, AUDITOR, &c.

A *mandamus* will not be issued to the auditor of the county of Monmouth to audit, adjust, allow and certify to the collector, for payment, bills of costs and fees of a justice of the peace for services, under the act concerning disorderly persons and the act for suppressing vice and immorality, the specific forms of auditing having been prescribed by statute in these cases.

---

On rule to show cause why a *mandamus* should not be issued.

The relator applies for a writ of *mandamus* to compel the defendant, auditor of the county of Monmouth, to audit, adjust, allow and certify to the county collector for payment,

three bills rendered by him for fees, costs and services as justice of the peace in said county, in criminal cases.    Exhibit A contains charges under the act concerning disorderly persons (*Rev., p.* 303), in January, 1888, amounting to $7.50; Exhibit B, charges under the act for suppressing vice and immorality (*Rev., p.* 1227), in February and March, 1888, amounting to $57.46; Exhibit C, like charges under the latter statute, in March and April, 1888, amounting to $20.38.

Argued at June Term, 1888, before Justices SCUDDER and REED.

For the relator, *G. C. Beekman.*

For the defendant, *J. Clarence Conover.*

The opinion of the court was delivered by

SCUDDER, J.    The respondent, auditor of the county, has refused, on presentation to him of these three several bills, to audit and certify them to the collector for payment, because it appears, as he alleges, by the records of the justice of the peace, the statements made by him, and the witnesses examined, that all of the persons charged and convicted before him were tramps, and should have been arrested and tried under the "Act to define and suppress tramps" (*Rev., p.* 1208, and *Rev. Sup., p.* 1083); that the purpose of proceeding under the other statutes was to make the constable a witness, and the only necessary witness, and to increase the fees and expenses by collusion between him and the justice.    These officers deny that there was any fraudulent purpose, and claim that, according to the complaint made and the facts shown, all persons arrested and convicted were disorderly or drunk by the excessive use of spirituous liquor, within the descriptions contained in these statutes.

The fees that may be taxed under the Vice and Immorality act are greater than those allowed by law in the other statutes, and are fixed by the supplement to the act constituting courts

for the trial for small causes (*Rev., p.* 565, § 139,) as the same fees for like services in other criminal cases.   Under the Disorderly Persons act and by the Tramp act the fees are the same —twenty-five cents to the justice of the peace and fifty cents to the constable or police officer making the arrest.   The proofs are also different.   When the complaints and convictions were made under the act concerning disorderly persons, the oath of the officer was sufficient to convict the person arrested, but by the supplement to that act, passed March 26th, 1888 (*Pamph. L., p.* 247), the oath or affirmation of one or more credible witnesses, other than the officer making the arrest, is required to convict.   It now agrees with the Tramp act, where like witness or witnesses are prescribed for conviction.   Under the Vice and Immorality act the officer making the arrest is both competent and sufficient, and a witness fee is claimed for him in each case.

These are the principal facts on which the auditor bases his refusal to audit and allow these bills presented by the relator; and he claims that it is a proper exercise of the discretion given him by the statute making his appointment.   He also says that there is no duty imposed on him by law to audit and certify these bills.   The duties of the auditor of the county of Monmouth are defined in a special statute, applicable to that county alone.   *Pamph. L.* 1873, *p.* 376.   He is, among other things (section 12), to examine carefully, and to audit and adjust all bills, claims, demands and accounts due to, or which may be presented against, the county of Monmouth, and to certify the amount so adjusted or allowed by him to the county collector for receipt and payment.   He is authorized and required to administer an oath or affirmation to the person or persons presenting such accounts or claims, and to any witness or witnesses who may be called or presented with respect to such claims, accounts or demands, and to examine the same as to the truth, fairness, correctness and justice of said accounts or claims, &c.   His duties, as thus described, are not merely ministerial, but discretionary and judicial.   In the exercise of duties of a ministerial character, a public

officer may be coerced by *mandamus*, but where there is official discretion given to him, for public protection, the court will refuse to control him by this extraordinary writ. There are cases where the nature and amount of services rendered are definitely ascertained and the compensation therefor is fixed by law. In these the duties of auditing and allowing the account for such services becomes a mere ministerial act which may be enforced by *mandamus*. *High Ex. Rem.*, § 101. That is claimed to be the case here, where the fees are fixed by law and regularly taxed. Supposing this to be so, the relator is met with this difficulty, that if the auditor refuse to allow and certify the account, through a misapprehension of his duty, there is another and complete remedy given him by an action against the county, in the usual form. The writ of *mandamus* is only given where the applicant has no other adequate remedy. On this ground alone, I think this writ might be refused. But there are other cases that are taken away from the audit of this public officer, where the adjustment and approval of claims against the county are especially entrusted to others who are supposed to have greater advantage and knowledge in determining the justice and accuracy of the claims made for services. In some matters it has been deemed right that it should be so regulated. *Lindabury* v. *Freeholders of Ocean*, 18 *Vroom* 417, is an instance where a *mandamus* was held to be a proper remedy to compel the board of freeholders to pay the fees of legal counsel in a homicide case, where they were verified and approved under his hand by the presiding judge of the Court of Oyer and Terminer, pursuant to section 100 of the Criminal Procedure act. In this county there was no auditor by statute. But in *Irving* v. *Applegate*, 20 *Vroom* 376, where there was a like verification and approval by the presiding judge, a *mandamus* to this auditor was refused because his audit was superseded by another, and the board of freeholders was required to pay without it.

On the motion now before this court, Exhibits B and C are bills for fees under the Vice and Immorality act, in which,

by the section above cited, justices and constables shall be entitled to the same fees as for like services in other criminal cases. In other criminal cases the fees fixed in that section are contingent, and shall be paid out of the funds of the county in which such services were rendered, *provided* the presiding judge of the Court of Oyer and Terminer shall approve of such payment. It seems that sections 140 and 141 of the Justices' Court act (*Rev.*, *p.* 566) make exceptions which do not require such approval, but provide another form of certification. By section 140, *if an indictment is found in the case,* the justices' bill of costs shall be handed by the prosecutors of the pleas to the county clerk, who shall review and correct the same, if necessary, and on his certificate the collector shall pay the amount to the justices. This section does not relate to these cases of summary conviction before a justice of the peace.

By section 141, which is like section 109 in the Criminal Procedure act, in convictions under the "Act to describe, apprehend and punish disorderly persons," and other cases therein named, it shall be the duty of the justice before whom any conviction is had, to make a bill of particulars of the costs in such case, attached to the commitment, and also certify and send up a copy of said bill of particulars of costs, with the conviction in said case, to the county clerk, who shall review and correct the same, if necessary, and shall certify the correct amount to the county collector, who thereupon shall pay the amount so certified to the said justice, &c.

The act of 1878 (*Pamph. L.*, *p.* 167 ; *Rev. Sup.*, *p.* 221) changed the particulars of costs, as to the justices' and constables' fees, but left the law otherwise unchanged.

The costs in proceedings under the act to punish disorderly persons, and for the suppression of vice and immorality, being fixed and certified by other officers and in other forms under the above cited statute, the respondent cannot be compelled by *mandamus* to audit and certify these bills of costs to the collector for payment.

The rule to show cause is discharged, and a writ of *mandamus* refused.