# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1899.

---

### THE STATE OF NEW JERSEY v. HENRY C. KELSEY.

Argued June 6, 1899—Decided November 13, 1899.

The act entitled "Supplement to an act entitled 'An act respecting the prerogative court and the power and authority of the ordinary,' approved April 16th, 1846," which supplement was approved April 18th, 1891 (*Gen. Stat.*, p. 1032), has not repealed or modified the provisions of the act entitled "A supplement to the act entitled 'An act fixing compensation of certain public officers of the state,' approved March 10th, 1876," which supplement was approved March 10th, 1879 (*Gen. Stat.*, p. 2960), and the further supplement to the same act, approved February 16th, 1881 (*Gen. Stat.*, p. 2961), in respect to the compensation of the register of the Prerogative Court, and the fees which the register receives under the first-mentioned act are not received for his own use, but for the benefit of the state.

---

On contract.

Before MAGIE, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the state, *Samuel H. Grey*, attorney-general.

For the defendant, *Richard V. Lindabury*.

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.    This is an action on contract, involving a sum of such magnitude as makes applicable to it the provisions of section 229 of the Practice act.    *Gen. Stat., p.* 2570.    It has accordingly been allowed to be tried at the bar of the court.    Counsel also agreed to waive a trial by jury and consented that the issue joined in the action should be tried and determined by the court upon the facts presented in a state of the case and admitted thereby to be true.

The facts admitted are that the defendant was secretary of state for two terms of five years each, the first commencing April 1st, 1887, and the second commencing April 1st, 1892; and that as register of the Prerogative Court he received, collected and retained to his own use, between October 1st, 1891, and the close of his last official term for fees for official services as register, various sums of money, amounting in the aggregate to $19,748.87.

It is contended on behalf of the state that the fees so collected belonged to the state and should have been paid into its treasury by the defendant, and that not having so done he is liable in this action for the amount of such fees with interest from the various dates when he received them.

By the provisions of an act entitled "An act to ascertain the power and authority of the ordinary and his surrogates, to regulate the jurisdiction of the prerogative court and to establish an orphans' court in the several counties of this state," passed December 16th, 1784 (*Pat. L., p.* 59), and an act of similar title passed June 16th, 1820 (*Rev. L., p.* 776), and superseding the former act, the secretary of state was made register of the Prerogative Court, and required, besides the "business heretofore done by him," to attend the sessions of that court and register the "decrees and proceedings." The constitution of 1844, by paragraph 4 of section 4 of article 6, made the secretary of state the register of the Prerogative Court and imposed on him the performance of "the duties required of him by law in that respect."

I have not been able to discover any more express descrip-

tion of the duties of the register of the Prerogative Court in respect to what he should record in his office until recent times.    It would seem that there was some doubt or possibly some dispute as to the extent of his duties in that respect. By the preamble of an act entitled "An act to regulate the secretary's office and the prerogative office of this state, and for the faithful execution of the same," passed November 23d, 1795 (*Pat. L., p.* 193), it appears that great numbers of letters of administration, wills and other papers remained at that time unrecorded, and by section 4 of the act it was enacted that the register of the prerogative office should be required to record with all convenient speed all papers which should thereafter come to his hands, and " which it may appertain to his office to record," and he was also required, and that without being entitled to any fees for the service, to record all letters of administration, wills and other papers which had been deposited in his office since July 2d, 1776, and which then remained unrecorded.    I think we may find in this legislation a definition of the duty of the register in respect to recording papers in his office which expressly extended to the registering of decrees and proceedings, the recording of letters of administration and wills, and then of " such papers" as are comprised within the vague description " which may appertain to his office to record."

By section 4 of the act entitled "An act relative to the office of secretary of state and register of the prerogative court," approved April 17th, 1846 (*Rev. Stat., p.* 808), the register of the Prerogative Court is again required to record with all convenient speed all papers which shall come to his hands and which it may appertain to his office to record. Comparing that section with section 10 of the same act and section 17 of the act entitled "An act respecting the orphans' court and the power and authority of surrogates," approved April 16th, 1846 (*Id., p.* 205), it would seem that other papers than letters of administration and wills were in fact recorded by the register of the Prerogative Court, but

whether those enumerated were all that appertained to his office to record is nòt entirely clear.

This review of the legislation affecting the duty of the register of the Prerogative Court respecting the recording of documents and papers in his office has been made, because in my judgment it has an important bearing upon the construction of the legislative act upon which defendant relies for authority to retain for his own use the fees collected by him and in question in this case.

It remains to be added upon this subject, that before the passage of the act upon which defendant relies there had been legislation extending the duty of surrogates in respect to the recording of documents and papers in their offices. Examples of such legislation may be found in section 6 of the supplement to the Orphans' Court act approved February 1st, 1861 (*Nix. Dig., p.* 657); in section 34 of the Orphans' Court act of April 16th, 1846 (*Rev. Stat., p.* 205); in the supplement to the Orphans' Court act approved March 1st, 1859 (*Nix. Dig., p.* 658), and perhaps other legislation.

Passing now to the consideration of the legislation on which defendant relies, it will be useful to first ascertain how the law stood prior 'to its passage. Here no extended historical review is required. It is conceded that from the very commencement of the office in question the official services of its incumbent had been compensated by fees regulated by statute and collected from the suitors or persons requiring his services in the recording of papers. This system was in existence when the act entitled "An act fixing the compensation of certain public officers of the state," approved March 16th, 1876 (*Pamph. L., p.* 50), was passed. By section 3 of that act it was enacted : "That the public officers of this state hereinafter mentioned shall receive no salaries, but shall be entitled to receive the fees following for services hereinafter specified, and no further or other fees, that is to say: the secretary of state shall be entitled to receive the same fees which he is now entitled by law to receive as secretary of state, clerk of the court of errors and appeals, clerk of the prerogative

court and register in the prerogative office, clerk of the court of pardons and commissioner of insurance."

By the supplement to the act last cited, approved March 10th, 1879 (*Gen. Stat.,* p. 2960), the third section of the original act was thus amended: "That the secretary of state shall receive a salary of six thousand dollars per annum, together with an allowance of four thousand dollars per annum for clerical assistants, to be paid by the treasurer upon warrant of the comptroller, which said salary shall be in full compensation for all services rendered by the said secretary of state as secretary of state, clerk of the court of errors and appeals, clerk of the prerogative court and register in the prerogative office, clerk of the court of pardons and commissioner of insurance, or in any other official capacity whatever, and for all clerk hire, save and except that the assistant secretary of state shall continue to receive a salary now provided by law for his services; and all fees now payable by law to him as secretary of state, clerk of the court of errors and appeals, clerk of the prerogative court, register in the prerogative office, clerk of the court of pardons or commissioner of insurance, or in any other official capacity whatever, shall be collected by him and a statement thereof in detail, verified by oath, shall be submitted quarterly to the comptroller, and, when audited by him, filed by the state treasurer; and the said secretary of state shall within ten days thereafter pay over the amount of such fees to the state treasurer under a penalty of five hundred dollars for each day's neglect to file such certificate and to pay over such moneys, to be recovered in the name of the treasurer of the state of New Jersey, for the use of the state in an action of debt in the New Jersey supreme court."

By a further supplement to the same act, approved February 16th, 1881 (*Gen. Stat.,* p. 2961), it was enacted: "That the secretary of state of this state shall not be entitled to or take, receive or retain, except for the use of the state, any compensation, pay, fee or emolument whatsoever, other than the annual salary of six thousand dollars, fixed and provided

for in section 3 of the act to which this is a supplement, for any act of service performed or thing done or furnished by him in any official capacity or under any law of this state, including the preparation and furnishing of copies of the laws for publication in the several newspapers designated to publish the same, and the preparation and furnishing of a copy of the laws to the person authorized to print the pamphlet laws of the state, in each and every year."

By these acts the legislature abandoned the system of compensating the secretary of state for official service in his various offices by fees, and substituted the system of compensating him for such official service by a salary and appropriation for clerical assistants, but the fees imposed by law upon suitors and others employing the services of the secretary of state were still to be collected for the benefit of the state.

It is obvious that if this legislation remains unrepealed and unmodified, the State of New Jersey is entitled to recover from the defendant the fees in question.

Defendant's contention is that it has been modified by the act entitled "Supplement to an act entitled 'An act respecting the prerogative court and the power and authority of the ordinary,' approved April 16th, 1846" (*Gen. Stat.*, p. 1030), which supplement was approved April 18th, 1891 (*Gen. Stat.*, p. 1032), which enacts as follows: "That it shall be the duty of the register of the prerogative court to record all wills, proofs, probate, letters testamentary issued thereon and inventories hereafter proven, and in cases now pending in the prerogative court or before the ordinary, and all accounts of executors, administrators, trustees and guardians, letters of guardianship and letters of administration hereafter issued, granted or allowed by the ordinary, and all orders, decrees and other papers of a similar nature which are now required by law to be recorded in the surrogates' offices of the respective counties; and for all official services as register of the prerogative court he shall be entitled to charge and receive the same fees as are now allowed by law to the surrogates of the several counties of this state for like services;

provided, that all expenses incurred in carrying out the provisions of this act shall be paid by the register out of the fees so collected." The same act repealed all acts and parts of acts inconsistent therewith.

The question before us must be solved by a determination of the legislative intent expressed in the last cited act. If it discloses an intent to authorize the register of the Prerogative Court to receive the fees which it permits him to charge, for his own use, he must prevail in this contest. But if it is to be construed as authorizing the reception of such fees by the register, but for the use of the state and to be accounted for to it, then the state must prevail.

The construction we attribute to the act must give effect to plain language, but the words must be read in connection with the circumstances and existing legislation.

Defendant's contention is that the act introduced a new mode of compensation to the secretary of state for official services not in harmony with the provision for compensation by salary introduced by the legislation of 1879, and that not for all his official service in his various offices but only in his office as register of the Prerogative Court.

The first observation I make upon this act is that its purposes are perfectly plain and unmistakable. It was designed thereby (1) to settle a precise statutory requirement for the recording in the register's office certain papers which had been before recorded upon the inference of duty arising from the acts to which attention has been drawn, and (2) to require to be recorded by the register other papers which the legislature had deemed proper to require to be recorded by surrogates when lodged in their offices.

Germane to these plain purposes is the provision in respect to the amount of fees to be charged suitors or persons employing the office and requiring its services in making such records. The existing legislation required the payment of such fees for the benefit of the state. The legislative intent plainly was to fix the amount of such fees by reference to the amounts allowed by law to the surrogates for like services.

A provision as to the destination of such fees, which would alter the whole scope of the legislation as to official compensation, is not germane to the plain purposes of the act, and such intent is not to be attributed to the legislature unless the language of the act does not reasonably admit any other meaning in harmony with the purposes of the act.

It is further to be observed that the construction contended for by defendant attributes to the phrase "for all official service as register of the prerogative court" he shall be entitled to charge and receive "the same fees as allowed by law for like services to surrogates," an intent to abrogate the provisions of the act of 1879, which gave the secretary of state a salary and an allowance for clerical assistants, as enforced by the provisions of the act of 1881, which prohibited him from taking or retaining any fees whatever except for the use of the state so far as those acts related to compensation for his services as register of the Prerogative Court. How far did such alteration extend upon such a construction? Did the legislature intend to leave the provision for salaries and allowance as compensation for the services of the secretary of state in his other offices? It would seem that such an intent would have been more appropriately expressed by a declaration that the fees to be received under this act were to be in addition to and excess of the compensation previously provided.

The language of this clause may, in my judgment, be reasonably read as referring to all such official services as the act expressly imposed upon the register of the Prerogative Court and some of which had not previously been imposed upon him as an official duty. Such reading would make the clause germane to the plain purposes of the act, and indicate that the legislative intent was to enable the register to receive such fees as he was entitled to receive similar fees by the act of 1879, not for his own use, but for the benefit of the state.

That such was the legislative intent is, in my judgment, incontestably settled by the proviso to the act under consideration. By the construction contended for, the secretary of state was to continue to be compensated for all his services in

his various offices, except the office of register of the Prerogative Court, by his salary and allowance for clerical assistants. As to all his services as register of the Prerogative Court, he would, on this construction, be entitled to receive and retain all the fees for the recording of the documents and papers which the act of 1891 requires him to record. But the proviso requires the register of the Prerogative Court to pay all the expenses of carrying out the provisions of this act out of the fees to be collected by him under the act. As the duty of carrying out those provisions was imposed on him absolutely, if the intent was that he should receive and retain all the fees, the provision that he should pay out of those fees the expenses of performing his duty was unnecessary and absurd.

The legislative intent expressed by this proviso is irreconcilable with the notion that the act had already granted the fees in question to the register of the Prerogative Court, to be received and retained by him for his own use. It can only be reconciled with the previous provisions of the act by construing them as applying to fees for such services as the act provided for. Then the meaning of the proviso becomes clear. Since the act required additional services of this officer, the legislature might well think that the previous allowance for clerical assistants would be inadequate, it therefore provided that the expenses of carrying out the act should be first paid out of the fees collected. The fees not thus expended were to be received by the register, not for his own use but for the benefit of the state, like other fees for the official services of the secretary of state in his various offices, under the provision of the act of 1879.

The conclusion thus reached is not, in my judgment, shaken by the provisions of section 1 of the act entitled "An act relative to the fees collected by the secretary of state for the use of the state," approved June 13th, 1895 (*Pamph. L., p.* 812), which requires the secretary of state to report monthly all fees and other moneys received by him for the use of the state, except judicial fees and fees received by him as clerk

or register.   As we have seen by the provisions of the act of 1879, such reports were to be made quarterly, and the act of 1895 only makes an earlier report necessary in respect to all receipts except certain fees.

It is not improper to add that since the passage of the act of March 30th, 1888, fixing the compensation of the Chancellor and the justices of this court (*Gen. Stat., p.* 2967) and prohibiting them from receiving any fees, various acts have been passed giving to those officers in language similar to the language of the act in question certain fees for official services required of them.  Upon the construction contended for in this case, these officers would have been justified in receiving and retaining such fees·in addition to the compensation provided by that act.   But no such construction has ever been given to those acts.

The result is that the state is entitled to recover.   From the pleadings and stipulations of facts there is nothing to show what defendant had expended out of the fees admitted to have been received by him in carrying out the provisions of the act in question.   The recovery must therefore be for the whole amount received with proper interest.

Defendant may take exceptions to any legal proposition upon which this finding has been put.