Wylie HARRIATT, Jr., Plaintiff,

v.

Dominick LILLO et al., Defendants.

Civ. No. 76–567.

United States District Court,
D. New Jersey.

June 2, 1978.

William J. McCloud, Union County Counsel, by Edward J. Toy, Asst. County Counsel, Elizabeth, N. J., for Union County on the motion.

Alan C. Higgs, defendant pro se.

### OPINION

BIUNNO, District Judge.

Alan C. Higgs, a constable by virtue of his appointment by the City of Plainfield, has served the Union County District Court under annual appointment by the Presiding Judge of that court since 1961.

On or about February 20, 1976, he executed a Warrant for Possession issued by the Union County District Court in landlord/tenant summary dispossess proceedings in which Dominick and Julia Tattoli (lessors) were plaintiffs and Wylie Harriatt, Jr. (tenant) was defendant.

As a consequence of his removal from possession, Harriatt filed a pro se complaint in this court under the Civil Rights Act, 42 U.S.C. sec. 1981, et seq. naming as defendants the lessors who brought this dispossess action, their realty agent (Croucher), their attorney (Weissman), the Linden Chief of Police (Lillo), and other parties, including the constable, Higgs, who executed the warrant. The complaint was filed March 29, 1976, in forma pauperis. On April 28, 1976, Judge Stern appointed an attorney for Harriatt, and on April 14, 1977, with

leave of the court, an amended complaint was filed.

An answer to the original complaint, with cross-claims against the other defendants, was filed on behalf of Constable Higgs by the Union County Counsel on June 16, 1976, as was an answer to this amended complaint on May 17, 1977.

On March 1, 1978, Union County Counsel filed a notice of motion for an order relieving that office of any duty to further represent Constable Higgs, notice being served on him, and he appeared *pro se* for the purpose of the motion only.

The motion is grounded on the proposition that Higgs' appointment is by the City of Plainfield and the Presiding Judge of the Union County District Court; that he is not an employee since he receives no salary or wage from the City, County or State, but is compensated for his services solely from fees allowed by law to constables, which fees are charged to parties in the proceedings in which they serve. A letter opinion from Deputy Attorney General Abbotts to the Administrative Office of the Courts, under date of July 29, 1977, is relied on to support the motion.

With due regard and respect to the view of the Deputy Attorney General, it is plain to the Court that in the execution of the Warrant of Possession, Constable Higgs was acting as an officer of the Union County Court, and not as an "independent contractor". The motion to be relieved will accordingly be denied.

■ The confusion that has arisen in this regard is no doubt attributable to the fact that since the end of World War II and the adoption of New Jersey's third constitution soon thereafter, the training of lawyers for practice in New Jersey has almost entirely ignored the fact that New Jersey is a common law state, and that the common law of England still prevails, except as modified by constitution or statute.

The basic rule is preserved by all three of New Jersey's constitutions, with which few lawyers are familiar today although free copies are available for the asking from the Secretary of State. See, *N.J.Const.1776*, Art. *XXII*; *N.J.Const.1844*, Art. *X*, sec. 1; *N.J.Const.1947*, Art. *XI*, sec. 1, par. 3.

The office of constable is said to be of ancient origin. One author observes that it is questioned whether this office existed in England before the statute of Westminster enacted in the thirteenth year of Edward I, while others assert that it is of Norman origin and was introduced to England by William (The Conqueror), citing 1 Blackstone 356, and other references. See *Anderson* on "Sheriffs, Coroners and Constables", sec. 3 (Dennis & Co., Buffalo, 1941). The same author traces the name itself to the French term "comestable", derived in turn from the Latin "comes stabuli". *Idem.* sec. 4.[1]

In New Jersey, the office was inherited along with the common law, later modified by statute. As observed by *Susskind*, "New Jersey Constables" (Soney & Sage, 1937), at p. 1:

"Today, in New Jersey, constables though elected in cities and towns, *have jurisdiction throughout the county in which they are elected*." (Emphasis added)

The statute law today is essentially the same. N.J.S.A. 40A:9–120, which provides for the appointment of constables by municipal governing bodies, still states that they "may exercise their functions and perform their duties anywhere in the county wherein the appointing municipality is located."

As is well known, constables function in two major areas: one, as officers of a court or other judicial body, and, two, as officers in non-judicial proceedings authorized by law, such as a distraint for rent under N.J.S.A. 2A:33–1, et seq. The issue here concerns the first category.

---

1. The original meaning in France of "head groom of the stables" had already developed into that of "principal officer of the household", and then to "field marshal or commander general of the army", before the word came into English. See Oxford English Dictionary, "Constable".

It must be recalled that before the New Jersey courts were restructured in 1948, under *N.J.Const.1947*, Art. *VI*, there were justices of the peace as well as district courts established in various municipalities on a district basis, but not on a county-wide basis. The constables served as officers of those courts.[2]

Under the restructured system, the justices of the peace were abolished, and a new system of county district courts replaced the former one. See N.J.P.L.1948, c. 264, and related statutes, now revised in N.J. S.A. 2A:6–1, et seq. Along with this group of changes the status of constables as ministerial officers of the new county district courts was continued, their duties to be those provided by rule of the Supreme Court. See, N.J.S.A. 2A:6–15, which limits this continuation to those "constables of the county" (i. e., appointed by any municipality in the county and authorized to serve throughout the county) "designated by the judge" of the county district court, or by the presiding judge when the court has branch parts. This statute goes back at least to N.J.P.L.1898, c. 228, sec. 5, 1910 Comp.Stat. p. 1955, sec. 5, later *1937 N.J. Rev.Stat.* 2:8–17.

■ Note must also be made of another change made by the 1947 Constitution. By *N.J.Const.1947*, Art. *VI*, sec. 2, par. 3, the new Supreme Court was vested with authority to "make rules governing the administration of all courts in the State . . ." This provision transferred to the new court, through its rule-making power, a function that theretofore had been a prerogative of the Legislature for other than the constitutional courts of law and equity. It must be recognized that when the Supreme Court

acts by rule of administration for statutory courts of limited jurisdiction (such as the county district courts) it acts as a legislature passing a statute. Thus, the rules of court dealing with administration must also be looked to along with statutes.

N.J.Court Rule R. 6:12–3(a) recognizes the continued status of constables as ministerial officers of the county district courts, though not by name. That rule directs that all officers executing writs issued out of those courts must file a bond with the clerk of the court, "in addition to the bond filed as provided by law with the governing bodies of the municipalities." So, also, does N.J.Court Rule R. 6:2–3(a), providing for designations by the presiding judge, and see the historical comment by *Pressler.* (Gann Ed., 1978)

It being clear and beyond question that constables designated to serve the county district courts are officers of those courts, it remains to consider whether it makes any difference that they are compensated by the allowance of fees rather than by salaries or wages.

The history of many public offices in New Jersey demonstrates that the mode of compensation does not affect the result. There are few reported cases on the point, but they make clear that until specific statutes for compensation by salary were enacted, the compensation for many public officers consisted of the fees specified by law.

*State v. Kelsey,* 64 N.J.L. 1, 44 A. 884 (Sup.1899), *aff'd.,* 65 N.J.L. 680, 51 A. 1109 (E&A, 1901) records the history in regard to the Secretary of State, who also served as clerk of the former Court of Errors and Appeals and the former Prerogative Court,

---

**2.** For the pattern of the former District Court Act, Revision of 1898, see *2 N.J.Comp.Stat. 1910,* p. 1947, et seq. In that act, section 1 continued the existing municipal district courts; this section became *N.J.R.S.* 1937, 2:8–1, and its present version is *N.J.S.A.,* 2A:6–1. Sections 1a through 1f established judicial district courts in Bergen, Hudson, Somerset and Morris Counties. They became *N.J.R.S.* 1937, 2:8–4 and 5, but were not reenacted with the 1953 revision of Title 2.

Section 5, at p. 1955, included "such constables of the city or county wherein such court may be established as the judge thereof may designate" as ministerial officers of the former district courts. This became N.J.R.S. 2:8–17, and is now N.J.S.A. 2A:6–15.

Sections 11 and 13a, at pp. 1956–7 authorized the appointment of a sergeant-at-arms, to possess all the powers and duties of a constable of such city or county. These became *N.J.R.S.* 1937, 2:8–31, *and now is* N.J.S.A. 2A:6–25.

clerk of the Court of Pardons and Commissioner of Insurance.

The court notes that as late as N.J.P.L. 1876, p. 50, the system of compensation by way of fee was continued, and the payment of salaries was forbidden, for the public officers dealt with by the Act, including the Secretary of State. It was not until 1879 that it was provided that the Secretary of State should be paid an annual salary, and that the fees payable to him by law should be collected and paid over to the State Treasurer for the use of the State.

Similarly, *Troth v. Freeholders of Camden*, 60 N.J.L. 190, 37 A. 1017 (E&A, 1897) records that it was not until 1874 that county clerks were put on salary for their services to the criminal and civil courts of the county, and directed to collect and pay over fees allowed by law for the use of the county.

*Fidelity Trust Co. v. Clerk*, 65 N.J.L. 495, 47 A. 451 (Sup., 1900), records that it was by N.J.P.L.1896, p. 50, that the clerk of the (former) Supreme Court was placed on salary, and the fees allowed by law declared to be "for the sole use of the State of New Jersey."

See, also, *1910 N.J.Comp.St.* p. 1517, et seq., especially sec. 4 and 7, for the 1902 revision of these changes from fee compensation to salary compensation, in the case of the clerks of the former supreme and chancery courts.

The statutes in regard to sheriffs are also enlightening. It seems to have been by reason of N.J.P.L.1905, p. 18, that sheriffs were placed on salary and the fees declared to be for the sole use of the respective counties. This Act is found in *1910 N.J. Comp.Stat.*, p. 4856, sec. 60 and 63. An earlier Act, N.J.P.L.1893, p. 191, found at *1910 N.J.Comp.Stat.*, p. 4854, sec. 54, directed that fees due to a former sheriff were to be collected by his successor "for the benefit of the said former sheriff or his legal representative."

For a general collection of similar enactments covering a wide variety of officers, see *1910 N.J.Comp.Stat.* p. 3781, et seq.

■ Finally, it is worth noting that in respect to all appointive State offices and positions, any compensation or fees received in addition to the regular salary provided, is required by *N.J.Const.1947*, Art. 7, sec. 1, par. 3, to be paid into the treasury of the State, unless allowed or appropriated by law.

It can hardly be contended that such ancient officers of the State and county as have been mentioned were not State or county officers for the many decades of New Jersey history during which their compensation consisted of the fees allowed by law and before they were placed on annual salary.

■ In the case of constables, the common law arrangement for compensation by fees allowed by law still continues. The constable is nonetheless a public officer, and since his jurisdiction is throughout the county, he is (like the county sheriff) a county officer. When he executes writs of a county district court by designation of the judge, he is a ministerial officer of that court.[3]

The motion seeking withdrawal of representation by the Union County Counsel as Attorney for Constable Higgs is accordingly denied.

---

3. The New Jersey Lawyers Diary (N.J.L.J., 1978), in pages 66 through 82, provides details of the personnel of the county district courts, including the names of designated constables.